## United States District Court
## District of Minnesota

| | |
|---|---|
| Randi L. Madden, | Court file no. 12-cv-1917 (SRN/SER) |
| Plaintiff, | |
| v. | **First Amended Complaint** |
| Patenaude & Felix, P.C., Marco Pina, Arturo Cruz, Matthew Cheung, Rebecca Vazquez, and Does 3-10. | **JURY TRIAL DEMANDED** |
| Defendants. | |

### Jurisdiction

1. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA") in their illegal efforts to collect a consumer debt from Plaintiff.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3. Venue is proper because the acts and transactions occurred in Minnesota, Plaintiff resides in Minnesota, and Defendants transact business in Minnesota.

## Parties

4.    Plaintiff Randi Madden is a natural person who resides in St. Paul, County of Ramsey, State of Minnesota, and is a "consumer" as defined by 15 U.S.C. § 1692a(3).

5.    Defendant Patenaude & Felix, P.C. (hereinafter "Defendant P&F") is a foreign corporation and unlicensed collection agency operating from an address of 4545 Murphy Cannon Road 3rd Floor, San Diego, CA 92123 and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6.    Defendant Marco Pina is a natural person and is employed at all relevant times by Defendant P&F as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

7.    Defendant Arturo Cruz is a natural person and is employed at all relevant times by Defendant P&F as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

8.    Defendant Matthew Cheung is a natural person and is employed at all relevant times by Defendant P&F as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9.      Defendant Rebecca Vazquez is a natural person and is employed at all relevant times by Defendant P&F as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10.     Defendants Does 3-10 are each a natural person and are each employed at all relevant times by Defendant P&F as collection agents and are each a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## Factual Allegations

11.     On or before 2003, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely, student loans with Bank One in the approximate combined amount of $45,000, which were used by Plaintiff's ex-boyfriend Richard Yake to attend college.

12.     Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiff.

## Plaintiff Makes a 12-Month Payment Arrangement

13.    On or about September 13, 2011, Plaintiff made a payment arrangement with Van Ru Credit Corporation, a company that was acting on behalf of First Marblehead Corporation.

14.    After that phone call, Plaintiff understood she needed to pay $300 per month for twelve months and began making payments in accordance with the agreement with Van Ru.

## Plaintiff Receives a Misleading Voicemail from Defendants on June 2, 2012

15.    On or about June 2, 2012, Plaintiff received a phone call from Defendant P&F which was a communication in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

16.    Defendant Pina left a voicemail for Plaintiff.

17.    During his voicemail, Defendant Pina stated he was calling from a law office, or words to that effect.

18.    Plaintiff is informed and believes that Defendant P&F is not registered with the Minnesota Secretary of State to conduct business in Minnesota.

19.    Plaintiff is informed and believes Defendant P&F is not registered with the Minnesota Lawyers Board of Professional Responsibility to engage in the practice of law Minnesota.

20.  Plaintiff is informed and believes that there are no attorneys currently employed by Defendant P&F that are licensed to practice law in the state of Minnesota.

21.  After receiving the voicemail, Plaintiff became confused and concerned that a law firm was contacting her.

22.  The above-described collection communication made to Plaintiff by Defendant employed by Defendant P&F, was made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(3), 1692e(10), and 1692f, amongst others.

### Defendant Pina Misleads Plaintiff on June 4, 2012

23.  On or about June 4, 2012, Plaintiff contacted Defendant P&F and this call became a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

24.  Plaintiff spoke with Defendant Pina.

25.  Defendant Pina stated he was calling regarding the debt described above, or words to that effect.

26.  Defendant Pina stated "unfortunately those loans haven't been paid and have now reached our law firm" or words to that effect.

27.   Plaintiff became confused and explained that she had been continuously making payments to First Marblehead, not Defendants, including a payment in May that had been accepted, or words to that effect.

28.   Defendant Pina stated that Defendants had received payments up until April 23, 2012, or words to that effect.

29.   Plaintiff stated she was confused why the loans had been turned over to another collection agency, when she had been making consistent payments pursuant to a previous agreement, or words to that effect.

30.   Defendant Pina stated "we're a collection lawfirm" or words to that effect.

31.   Defendant Pina then explained that no legal actions had currently been taken against Plaintiff or Richard Yake, but if clients their request it, it [legal action] may be taken if they cannot reach a "formal arrangement" to prevent that, or words to that effect.

32.   Defendant Pina then attempted to negotiate a settlement on the debt and again explained Plaintiff needed to pay Defendants now, or words to that effect.

33.   Plaintiff asked why she was just hearing from Defendants now, if Defendants had been collecting on the account for eighty-nine (89) days as represented by Defendant Pina, or words to that effect.

34.    Defendant Pina stated they sent Plaintiff a letter and they did not receive it back, so they assumed she received it, or words to that effect.

35.    Plaintiff explained she had not lived at that address in over four years and also explained that First Marblehead had all of her current contact information, or words to that effect.

36.    Defendant Pina then asked if Plaintiff wanted to formalize anything or if she just wanted to let it "continue going where it's going" or words to that effect.

37.    Plaintiff asked Defendant Pina what that meant and Defendant Pina ignored Plaintiff's question and again attempted to collect the debt, or words to that effect.

38.    Plaintiff explained she could only afford $300 per month, which was the agreed upon payment arrangement with First Marblehead, or words to that effect.

39.    Plaintiff became confused as to why the arrangement with First Marblehead would have changed since the agreement the previous fall.

40.    Defendant Pina explained that if Plaintiff paid Defendants approximately $300 per month, that would only be enough for one loan, and Plaintiff would need to pay off one loan at a time, or words to that effect.

41.   Plaintiff then requested written confirmation of the possible plan, or words to that effect.

42.   Plaintiff and Defendant Pina then discussed a possible payment plan of $297.06 per month, and Defendant Pina stated he would send the "formal arrangement," or words to that effect.

43.   Defendant Pina then confirmed Plaintiff's current address, or words to that effect.

44.   Soon thereafter, the call ended.

45.   This conversation was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), and 1692f, among others.

**Plaintiff Does Not Receive a Letter from Defendants**

46.   As of June 15, 2012, Plaintiff had not received the letter Defendant Pina said he was sending.

47.   As of June 15, 2012, Plaintiff had not received any phone calls from Defendants since her last conversation with them on June 4, 2012.

48.    On or about June 15, 2012, Plaintiff sent a payment of $300 to First Marblehead.

### Defendant Pina Leaves a Misleading Message on June 19, 2012

49.    On or about June 19, 2012, Plaintiff received a phone call from Defendant P&F which was a communication in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

50.    Defendant Pina left a voicemail for Plaintiff.

51.    During his voicemail, Defendant Pina again stated he was calling from a law office, or words to that effect.

52.    The above-described collection communication made to Plaintiff by Defendant employed by Defendant P&F, was made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(3), 1692e(10), and 1692f, amongst others.

### Defendant Pina Harasses Plaintiff on June 19, 2012

53.    On or about June 19, 2012, Plaintiff returned Defendant Pina's voicemail which became a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

54.   Plaintiff spoke with Defendant Pina.

55.   Defendant Pina asked Plaintiff if she had received the letter, and Plaintiff said no, or words to that effect.

56.   Defendant Pina explained that the letter's mailing had been delayed, but it was mailed on June 13, 2012, or words to that effect.

57.   Defendant Pina wanted to know if Plaintiff could submit a payment by tomorrow, or words to that effect.

58.   Plaintiff explained she had already mailed a payment to First Marblehead or words to that effect.

59.   Defendant Pina explained that Plaintiff had a "formal arrangement" and they expected payments in order to maintain the arrangement, words to that effect.

60.   Plaintiff stated that she had not sent a payment to Defendants because she not received any written correspondence, and she had not been provided with Defendants address, or words to that effect.

61.   Defendant Pina, as he did in the previous call, then stated that Plaintiff had received the initial demand letter, or words to that effect.

62.   Plaintiff again explained she had never received a letter from Defendant and as she had previous stated, explained that Defendants appeared to have an incorrect address for her, or words to that effect.

63.   Defendant Pina ignored Plaintiff's statement and again explained that the arrangement requires payments and it was her option "if she wanted to follow through or not" or words to that effect.

64.   Plaintiff became confused as she understood that any agreement was subject to her receiving something in writing.

65.   Despite the fact that Plaintiff and Defendants had not reached a formalized agreement, the repeated allegation that Plaintiff was in "violation" of such an agreement made her increasingly angry and frustrated.

66.   Plaintiff felt angry, confused, and concerned that Defendant Pena was implying she would be sued.

67.   Plaintiff explained she had followed through, but that she had mailed a payment to First Marblehead because Defendants had not provided their address, or words to that effect.

68.   Plaintiff again explained that she could not send a payment to Defendants until she received something in writing from them and had their address, or words to that effect.

69.     Defendant Pina explained to Plaintiff she should receive the letter in a few
        days and it was "up to her" if she wanted to make payments with
        Defendants, or words to that effect.

70.     Plaintiff again explained she had already made a payment that month, or
        words to that effect.

71.     Plaintiff reiterated that she could not make any payments to Defendants
        because she had not received the alleged letter and did not know
        Defendants address, or words to that effect.

72.     Defendant Pina then abruptly ended the call.

73.     This conversation was a collection communication in violation of
        numerous and multiple provisions of the FDCPA, including, but not
        limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(5), and 1692f,
        among others.

### Defendant Pina Leaves a Misleading Message on June 26, 2012

74.     On or about June 26, 2012, Plaintiff received a phone call from Defendant
        P&F which was a communication in an attempt to collect a debt as that
        term is defined by 15 U.S.C. § 1692a(2).

75.     Defendant Pina left a voicemail for Plaintiff.

76.   During his voicemail, Defendant Pina stated he was calling from a law office, or words to that effect.

77.   That same day, Plaintiff checked her banking records, and her check to First Marblehead had been cashed and credited to First Marblehead.

78.   The above-described collection communication made to Plaintiff by Defendant Pina employed by Defendant P&F, was made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(3), 1692e(10), and 1692f, amongst others.

**Defendant Cruz Misleads Plaintiff on June 26, 2012**

79.   On or about June 26, 2012, Plaintiff returned Defendant Pina's voicemail and this call became a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

80.   Plaintiff spoke with Defendant Cruz, who identified himself as Defendant Pina's supervisor, or words to that effect.

81.   Defendant Cruz asked if Plaintiff had mailed in a payment pursuant to the arrangement, because it was now overdue, or words to that effect.

82.   Plaintiff explained, as she had explained to Defendant Pina, that she had never received written correspondence outlining the potential agreement,

nor had she been provided with Defendants address, or words to that effect.

83. Defendant Cruz stated a letter had been mailed on June 13, 2012, or words to that effect.

84. Plaintiff also explained that she checks her mail everyday, and she had not received any correspondence from Defendants, or words to that effect.

85. Defendant Cruz explained that because Plaintiff had not paid Defendants, he was canceling the agreement, or words to that effect.

86. Defendant Cruz told Plaintiff she needed to find a fax in order to receive the paperwork regarding the payment agreement, or words to that effect.

87. Plaintiff explained that she only had access to a fax machine at her workplace and because of privacy concerns, she did not want to receive correspondence for this matter at her workplace, or words to that effect.

88. Plaintiff explained she would not make a payment until she received something in writing from Defendants and explained she had already made a payment to First Marblehead because she had not received anything from Defendants, or words to that effect.

89.    Defendant Cruz again told Plaintiff that because she was not making a payment that month, he was canceling the arrangement, or words to that effect.

90.    Defendant Cruz explained that it was Plaintiff's problem that she had not received the letter, because Defendants send thousands of letters and they have no problems reaching their destinations, or words to that effect.

91.    Plaintiff tried to explain she did not have any issues with receiving her mail, but Defendant Cruz talked over her and said he would send another letter, or words to that effect.

92.    Thereafter, the call ended.

93.    After the call, Plaintiff felt bewildered at the fact that Defendants were threatening apparent punishment for something Plaintiff had no control over.

94.    This conversation was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(5), and 1692f, among others.

### Defendant Pina Leaves a Misleading Message on June 28, 2012

95.     On or about June 28, 2012, Plaintiff received a phone call from Defendant P&F, which was a communication in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

96.     Defendant Pina left a voicemail for Plaintiff.

97.     During his voicemail, Defendant Pina stated he was calling from a law office, or words to that effect.

98.     The above-described collection communication made to Plaintiff by Defendant Pina employed by Defendant P&F, was made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(3), 1692e(10), and 1692f, amongst others.

### Defendant Pina Misleads Plaintiff on June 28, 2012

99.     On or about June 28, 2012, Plaintiff returned Defendant Pina's voicemail and this call became a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

100.    Plaintiff spoke with Defendant Pina.

101.    Defendant Pina stated that Defendants had sent the letter to the wrong address, or words to that effect.

102.   Defendant Pina then made a settlement offer of 65% of the balance, or words to that effect.

103.   Plaintiff asked for a copy of the offer and Defendant Pina stated they would send the offer Plaintiff agreed to it in advance, or words to that effect.

104.   Plaintiff then requested a copies of the offer and proposed payment arrangement via e-mail, or words to that effect.

105.   Defendant Pina stated they could not transmit the offer via e-mail because of privacy reasons, or words to that effect.

106.   Defendant Pina stated they could only send an e-mail if it was a "pretty serious deal" or words to that effect.

107.   Plaintiff stated she had confirmed her current address during a previous phone call with Defendants, yet they sent it to the wrong address, or words to that effect.

108.   Plaintiff expressed concern that Defendants would take action against her because she had not received the alleged letter due to Defendants own error regarding her address, or words to that effect.

109.   Defendant Pina explained that no legal action had currently been taken on the accounts, and they were not really looking towards that because Plaintiff answered their calls, or words to that effect.

110.   Defendant Pina further explained that they hoped to resolve the matter on a voluntary basis without having to go through "all the back door alleys" or words to that effect.

111.   Defendant Pina explained they had contacted Plaintiff because Mr. Yake, the primary borrower, had filed bankruptcy in 2001 and was no longer obliged to pay the loans, or words to that effect.

112.   Plaintiff asked if Defendants had contacted Richard Yake, the primary obligor on the loans, and the person who actually used the loan funds.

113.   Defendant Pina stated they could not contact Mr. Yake because Mr. Yake had filed bankruptcy and Defendants were aware of that, or words to that effect.

114.   Defendant Pina stated they had only contacted Plaintiff because of their client's request, or words to that effect.

115.   Plaintiff is informed and believes that the loans did not exist in 2001.

116.   Upon information and belief, Richard Yake has not discharged the loans in
       bankruptcy.

117.   Defendant Pina then asked Plaintiff what she could afford to pay per
       month, or words to that effect.

118.   As she had explained before, Plaintiff stated she could pay $300 per
       month.

119.   Soon thereafter, the call ended.

120.   After the call, Plaintiff felt frustrated at the way she had been treated by
       Defendants.

121.   This conversation was a collection communication in violation of
       numerous and multiple provisions of the FDCPA, including, but not
       limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(5), and 1692f,
       among others.

### Defendant Cheung's Illegal Collection Letter Dated June 28, 2012

122.   On or about June 28, 2012, Plaintiff received a letter from Defendant P&F
       which was signed by Defendant Cheung, Esq. which became a
       "communication" in an attempt to collect a debt as that term is defined by
       15 U.S.C. § 1692a(2).

123. This letter is the only written communication Plaintiff has received from any Defendant herein.

124. The letter outlines the potential payment agreement as discussed with Defendant Pina.

125. This letter is signed by Defendant Cheung identifying himself as an attorney by using the suffix esq.

126. This letter is written on Defendant P&F's letterhead purporting to be law office.

127. Plaintiff is informed and believes that Defendant Cheung is not an attorney licensed to practice law in the State of Minnesota.

128. The letter from Defendant P&F purports to be a communication from a debt collector.

129. Plaintiff is informed and believes that neither Defendant P&F nor Defendant Cheung are licensed by the Minnesota Department of Commerce to collect debts in the State of Minnesota.

130. This letter did contain the proper notices required by 15 U.S.C § 1692g et seq. (the "g-notice").

131. Specifically, the letter does not state the consumer has the right to dispute the debt within thirty (30) days.

132. This letter was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), 1692f, and 1692g, among others.

### Defendant Pina Misleads Plaintiff on July 9, 2012

133. On or about July 9, 2012, Plaintiff had two conversations with Defendant Pina, each call became a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

134. Plaintiff indicated she had received the above-described letter, and wanted to know what would happen with the other loans, or words to that effect.

135. Defendant Pina explained that if their client decides to do something with the other loans then "proper action" would be taken, but because Plaintiff lived out of state, there wasn't much they could do, or words to that effect.

136. Plaintiff asked why she could not pay $300 per month and have that money apply towards all of the loans, instead of just one loan, or words to that effect.

137. Defendant Pina indicated that they "don't break down the payments" or words to that effect.

138.   Plaintiff explained that she wanted to be able to make payments on all of the loans, rather than just one, or words to that effect.

139.   Defendant Pina asked Plaintiff if she realized that good faith payments do not comply with proper credit purposes and paying $60 per month does not look good on her behalf, or words to that effect.

140.   Defendant Pina explained that Plaintiff could simply continue to send good-faith payments of $300 per month for all the loans, or enter into the formal arrangement of $300 per month for one loan, or words to that effect.

141.   Plaintiff asked Defendant Pina who she could talk to about applying payments of $300 to all of the loans, or words to that effect.

142.   Defendant Pina said "there's nobody you can talk to" about that and that if Plaintiff wanted to continue to send "good-faith payments" it would not stop collection efforts, or words to that effect.

143.   Plaintiff clarified that if she made payments of $300 per month without a formal arrangement, Defendants could still take adverse action against her, or words to that effect.

144.   Defendant Pina stated yes, or words to that effect.

145.    Defendant Pina told Plaintiff she either needed to accept the payment
        arrangement in the letter, or pay 65% of the balance, or words to that
        effect.

146.    Defendant Pina explained that their guidelines are to not take less than
        $100.00 per loan, or words to that effect.

147.    Plaintiff became even more confused because Defendants never made a
        settlement offer in compliance with Defendants' own stated guidelines.

148.    Defendant Pina repeatedly told Plaintiff that she was canceling the deal, or
        words to that effect.

149.    Plaintiff explained to Defendant Pina that the loans originated in 2002, and
        that Richard Yake could therefore not have discharged them in bankruptcy
        in 2001 as previously discussed, or words to that effect.

150.    Defendant Pina then stated Richard Yake had a cease and desist against
        Defendants and did not want Defendants to call him and therefore they
        could not contact him, or words to that effect.

151.    Defendant Pina had previously stated that Defendants had never
        attempted to contact Richard Yake, or words to that effect.

152.    Plaintiff then asked if she could get a cease and desist against Defendants.

153.   Defendant Pina stated that Plaintiff could, but that such a cease and desist would not prevent Defendants from "collection efforts will not stop at that" or words to that effect.

154.   Defendant Pina again explained Plaintiff could pay $297.06 for the one loan, but he could not guarantee that Defendants would not take "adverse action" on the other four loans, or words to that effect.

155.   Defendant Pina explained the verbal agreement was formal and Plaintiff did not need to sign anything because the loans have "no legal action currently," or words to that effect.

156.   Defendant Pina told Plaintiff she was responsible for the missed June payment, or words to that effect.

157.   Defendant Pina asked Plaintiff if she wanted to cancel the arrangement, or words to that effect.

158.   Plaintiff again explained that she wanted to have her payments applied to all four loans, or words to that effect.

159.   Thereafter the call ended.

160.   Plaintiff then called Defendant Pina again to finish their conversation.

161.   Plaintiff explained that the information Defendants had provided was confusing and erroneous, or words to that effect.

162.   Plaintiff expressed, as she had previously, that she was concerned about being held responsible for June's payment, when it was Defendant's fault for not sending the above-described letter, or words to that effect.

163.   Plaintiff also expressed concern about paying on only one of the accounts, if that could still lead to Defendants obtaining judgments on the other accounts, or words to that effect.

164.   Defendant Pina explained he had no control over the other accounts, or words to that effect.

165.   After the call, Plaintiff felt angry, frustrated, and bewildered especially since she had submitted her June payment under the agreement she entered into the previous fall.

166.   This conversation was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), and 1692f, among others.

### Defendant Vazquez Leaves a Misleading Message on July 17, 2012

167. On or about July 17, 2012, Plaintiff received a phone call from Defendant P&F which was a communication in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

168. Defendant Vazquez left a voicemail for Plaintiff.

169. During her voicemail, Defendant Vazquez stated she was calling from a law office, or words to that effect.

170. Defendant Vazquez requested a return call to 1-800-832-7675 giving her extension as 7674.

171. Thereafter, the message ended.

172. The above-described collection communication made to Plaintiff by 131. Defendant Vazquez employed by Defendant P&F, was made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(3), 1692e(10), and 1692f, amongst others.

### Defendant Vazquez Leaves a Misleading Message on July 18, 2012

173. On or about July 18, 2012, Plaintiff received a phone call from Defendant P&F which was a communication in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

174.    Defendant Vazquez left a voicemail for Plaintiff.

175.    During her voicemail, Defendant Vazquez stated she was calling from a law office, or words to that effect.

176.    Defendant Vazquez requested a return call to 1-800-832-7675 giving her extension as 7674.

177.    Thereafter, the message ended.

178.    All of the above-described collection communications made to Plaintiff by Defendant Vazquez employed by Defendant P&F, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(3), 1692e(10), and 1692f, amongst others.

## Summary

179.    All of the above-described collection communications made to Plaintiff by these individual Defendants and other collection employees employed by Defendants were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the provisions of the FDCPA cited herein.

180.   Plaintiff has suffered actual damages as a result of Defendants' illegal conduct in the form anger, anxiety, emotional distress, fear, frustration, upset, loss of sleep, and embarrassment amongst other negative emotions.

## Respondeat Superior Liability

181.   The acts and omissions of these individual Defendants, and the other debt collectors employed as agents by Defendant P&F who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant P&F.

182.   The acts and omissions by these individual Defendants and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant P&F in collecting consumer debts.

183.   By committing these acts and omissions against Plaintiff, these individual Defendants and these other debt collectors were motivated to benefit their principal, Defendant P&F.

184.   Defendant P&F is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection

employees, including but not limited to violations of the FDCPA and Minnesota law, in their attempts to collect this debt from Plaintiff.

## Trial by Jury

185. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. Amend. 7; Fed. R. Civ. P. 38.

## Causes of Action

## Count 1:

## Violations of the Fair Debt Collection Practices Act

## 15 U.S.C. §§ 1692 et seq.

## As to All Defendants.

186. Plaintiff incorporates the foregoing paragraphs as though fully stated herein.

187. The foregoing intentional and negligent acts and omissions of Defendants constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692–1692p.

188. As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and,

reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from

each and every Defendant.

## Prayer for Relief

**Wherefore**, Plaintiff prays that judgment be entered against each Defendant for:

## Count 1:

## Violations of the Fair Debt Collection Practices Act

## 15 U.S.C. §§ 1692 et seq.

- statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- actual damages pursuant to 15 U.S.C. § 1692k(a)(1) in an amount to be
determined at trial;

- costs of litigation and reasonable attorney fees pursuant to 15 U.S.C. §
1692k(a)(3); and

- for such other and further relief as may be just and proper.

## [signatures follow]

Respectfully submitted,

**The Ryder Law Firm, LLC**

Date: <u>January 11, 2013</u>                    <u>*s/Randall P. Ryder*</u>               
Randall P. Ryder (#389957)
2701 University Ave SE, #209
Minneapolis, MN 55414

phone • 612.424.3770
fax • 612.605.3247
e-mail • email@theryderlawfirm.com

**BARRY, SLADE & WHEATON, LLC**
Christopher S. Wheaton, Esq.
Attorney I.D.#0389272
2701 University Avenue SE, Suite 209
Minneapolis, Minnesota 55414
Telephone:  (612) 379-8800
Facsimile: (612) 605-2102
cwheaton@lawpoint.com

**Attorneys for Plaintiff**